UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PHAROS CAPITAL GROUP, LLC | § | |
| (n/k/a PHAROS CAPITAL GROUP | § | |
| GP, LLC), PHAROS CAPITAL | § | |
| PARTNERS, L.P., D.C. | § | |
| INVESTMENT PARTNERS, LLC, | § | CIVIL ACTION NO. 3:13-CV-2603-B |
| CRANTS-DEVLIN, LLC, (d/b/a | | |
| LYNVIEW PARTNERS, LLC), D. | § | |
| ROBERT CRANTS, III, and | § | Judge Jane J. Boyle |
| MICHAEL DEVLIN, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| NUTMEG INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Motion to Remand (doc. 19) filed August 22, 2013, and

Defendant's Motion to Transfer (doc. 7) and Motion to Stay (doc. 8), both filed July 18, 2013. For

the reasons stated below, the Court finds that Plaintiffs' Motion to Remand should be and hereby

is **GRANTED**. Because the Court remands the case, the Defendant's Motion to Transfer (doc. 7)

and Motion to Stay (doc. 8) are **MOOT**.

## I.

## BACKGROUND

This case arises out of an insurance policy that Plaintiffs purchased from Defendant Nutmeg

Insurance Company in which Nutmeg agreed to indemnify Plaintiffs for "reasonable and necessary

costs, charges, fees (including attorney's fees and experts' fees) and expenses incurred in the defense"

of a "civil proceeding." Doc. 29, Policy Ex. 5 §§ IV(A)-(B). The parties disagree as to their respective obligations under the contract, and Plaintiffs have brought suit to enforce the contract and recover certain costs arising from prior suits. Doc. 4-1, Orig. Pet. Ex. A-2, at 1-2.

Plaintiffs in this case are a group of individuals and business entities who purchased an insurance policy from Nutmeg. Doc. 4-1, Orig. Pet. Ex. A-2 ¶ 13. Plaintiffs are Pharos Capital Group, LLC n/k/a Pharos Capital Group GP, LLC ("Pharos Capital"), Pharos Capital Partners, LP ("Pharos Partners"), DC Investment Partners, LLC ("DC Partners"), Crants-Devlin, LLC d/b/a Lynview Partners, LLC ("Lynview"), D. Robert Crants III ("Crants"), and Michael Devlin ("Devlin") (collectively, "Plaintiffs"). Doc. 4-1, Orig. Pet. Ex. A-2. Crants and Devlin manage Pharos Capital, Pharos Partners, and DC Partners as private equity investment funds. Doc. 4-1, Orig. Pet. Ex. A-2 ¶ 12. Defendant to this action is Nutmeg Insurance Company (hereinafter "Nutmeg"). Doc. 4-1, Orig. Pet. Ex. A-2.

A.    *Background Facts*

In 2008, Pharos Capital purchased a Private Equity Fund and Management Liability Policy No. 00-DB-0250455-08 ("Pharos Policy") from Nutmeg with a $5 million limit of liability for claims made between May 14, 2008, and May 13, 2009. Doc. 4-1, Orig. Pet. Ex. A-2 ¶ 13. Under the policy Pharos Capital and Pharos Partners are "Insured Organizations," and Crants and Devlin are "Insured Persons." Doc. 4-1, Orig. Pet. Ex. A-2 ¶ 13. Additionally, DC Partners purchased a Private Equity Fund and Management Liability Policy No. 00-DB-0250453-08 ("DC Policy") from Nutmeg with a $1 million limit liability for claims made between May 14, 2008, and May 13, 2009. Doc. 4-1, Orig. Pet. Ex. A-2 ¶ 19. The policy covers DC Partners and Lynview as "Insured Organizations." *Id.* The DC Policy also covers Crants and Devlin as "Insured Persons." *Id.*

In September 2008, a lawsuit was filed against Crants in his capacity as manager and/or employee of Pharos Partners, DC Partners, and Lynview ("*Siddle I*"). *Id.* ¶¶ 24-30. In May 2009, the same group of plaintiffs from *Siddle I* filed another lawsuit against Pharos Partners, DC Partners, and Devlin ("*Siddle II*"), alleging their liability for certain transactions also related to *Siddle I*. *Id.* ¶¶ 31-34.

In October 2008, Plaintiffs requested indemnification from Nutmeg, via its agent, under the Pharos Policy and the DC Policy. *Id.* ¶ 34. In February 2009, Nutmeg denied coverage for the claims under the policy. *Id.* ¶ 36.

In September 2009, Crants moved for summary judgment in *Siddle I*, which was granted by that court. *Id.* ¶ 39. Subsequently in June 2010, that court dismissed the *Siddle II* action against the other Plaintiffs. *Id.* ¶ 40. The Sixth Circuit affirmed the district court's findings and dismissal of *Siddle I* and *Siddle II* actions with prejudice. *Id.*

In April 2013, Plaintiffs requested that Nutmeg pay their claims under the policy, which Nutmeg declined. *Id.* ¶ 44. On June 13, 2013, Plaintiffs initiated a civil action against Nutmeg in the 14th Judicial District Court of Dallas County, Texas, seeking a declaratory judgment that Nutmeg breached its contract, violated the Texas Insurance Code, and breached duties of good faith and fair dealing. *Id.* ¶¶ 47-54, 55-64, 65-69.

On July 7, 2013, Nutmeg removed this case to federal court, alleging diversity of citizenship as the basis for this Court's jurisdiction. Doc. 1, Not. of Removal ¶ 3. Nutmeg filed a Motion to Transfer the case to the Middle District of Tennessee as well as a Motion to Stay Discovery on July 18, 2013. Docs. 7, Def.'s Mot. Transfer; 8, Def.'s Mot. to Stay. Plaintiffs filed the instant Motion to Remand on August 22, 2013. Doc. 19, Mot. to Remand.

## II.

## LEGAL STANDARD

A.    *Removal Based on Diversity Jurisdiction*

Federal courts are courts of limited jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). They possess only the power authorized by the Constitution and statute, which is not to be expanded by judicial decree. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also McKee v. Kansas City S. Ry. Co.*, 358 F.3d 329, 337 (5th Cir. 2004). District courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery,* 243 F.3d at 916. When a party removes a suit to federal court on diversity grounds under 28 U.S.C. § 1332, the removing party must demonstrate that each element of § 1332 is met. Furthermore, an action removable solely on the basis of diversity jurisdiction "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). "[A]ny doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007); *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (noting that any questions or ambiguities "should be strictly construed in favor of remand").

B.    *Improper Joinder*

Though diversity jurisdiction requires complete diversity of the parties, a case involving a non-diverse defendant may nevertheless be removed to federal court if it is established that the non-diverse defendant was improperly joined. *See Ridgeview Presbyterian Church v. Phila. Indem. Ins. Co.*, No. 3:13-CV-1818-B, 2013 WL 5477166, at *2 (N.D. Tex. Sept. 30, 2013) (J. Boyle) (citing *Triggs*

*v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)). When the basis for removal to federal court is diversity, "[t]he party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (en banc). If the party fails to meet this burden and joinder of the in-state party was in fact proper, removal will be inappropriate and the federal court will not have subject matter jurisdiction. *Id.* at 575 ("The Supreme Court thus made clear that the burden on the removing party is to prove that the joinder of the in-state parties was improper . . . .").

To establish improper joinder, the removing party must demonstrate "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* at 573. As to this latter showing, a defendant only meets its burden by showing that there is no possibility that the non-diverse plaintiff may recover against the defendants under applicable law. *Id.* "If there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved, then there is no [improper] joinder." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (internal quotations omitted). In other words, "if there is even a possibility that a state court would find the complaint states a cause of action against any of the resident defendants, the federal court must find the joinder was proper and remand the case to the state court." *Triggs*, 154 F.3d at 1287 (internal quotations omitted). Admittedly, this possibility must be reasonable and not merely theoretical. *Great Plains Trust*, 313 F.3d at 312.

## III.

## ANALYSIS

In the present case, Plaintiffs move for remand on the grounds that the parties are not

completely diverse. Nutmeg responds by asserting that the non-diverse plaintiff, Pharos Partners, is improperly joined and has not pled sufficient facts to establish its claims for breach of contract, violations of the Texas Insurance Code, and bad faith.

A.   *Deciding a Motion to Transfer before a Motion to Remand*

Nutmeg argues that the Court may decide its Motion to Transfer prior to deciding Plaintiffs' Motion to Remand. Doc. 28, Def.'s Resp. 7. Courts typically consider subject matter jurisdiction as a preliminary matter, although some have ruled on a motion to transfer before deciding a motion to remand. *See Doubletree Partners, L.P. v. Land America American Title Co.*, No. 3-08-CV-1547-O, 2008 WL 5119599, at *2 (N.D. Tex. Dec. 3, 2008) ("[w]hile it is true that courts generally consider subject matter jurisdiction as a preliminary matter . . . federal courts need not decide a motion to remand a removed case before ruling on a motion to transfer to another district."). The Court in *Doubletree* set out three factors that favor deciding a motion to transfer prior to deciding a motion to remand: (1) a suit is already pending in the transferee district; (2) the remand motion will not suffer prejudice as a result of the transfer; and (3) transfer would permit the court who would ultimately try the case to rule on the remand motion. *Doubletree*, 2008 WL 5119599, at *2.

The reasoning of *Doubletree* does not apply with the same force in this case. In *Doubletree*, the Court rested its decision in large part on the "first-to-file" rule.[1] Here, neither the first-to-file rule nor any other comparable justification applies because the underlying suits in this action are closed cases from the Middle District of Tennessee. Doc. 4, Pls.' Orig. Pet. Ex. A-2 ¶ 40. Moreover, deciding the

---

[1] The "first-to-file" rule dictates that when two related cases are pending before different federal courts, absent compelling circumstances, the court in which the case was last filed will refuse to hear the case, as long as the issues in the two suits substantially overlap. *Doubletree*, 2008 WL 5119599, at *2-3 (citing *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999)).

Motion to Remand first will preserve judicial resources by permitting this Court to forego a transfer analysis and decide as an initial matter whether federal jurisdiction attaches, rather than leaving jurisdictional questions for a transferee court. Thus, the Court will decide the Motion to Remand first.

B.      *Waiver of Improper Joinder Argument*

Plaintiffs argue that this Court should not consider Nutmeg's improper joinder argument because Nutmeg did not assert improper joinder as a basis for jurisdiction in its Notice of Removal or Amended Notice of Removal. Doc. 31, Pls.' Reply 12 n.25. While Nutmeg admits that it did not allege improper joinder in its Notice of Removal, it maintains that it has not waived an argument for improper joinder. Doc. 28, Def.'s Resp. 9 n.1. This Court has previously allowed a defendant to argue for the first time in its response to a motion to remand that diversity existed because the non-diverse party was not a real party in interest. *Lone Star Fund IV(US) LP v. Lee*, No. 3:09-CV-1614-B, 2010 WL 1790392, at *3 (N.D. Tex. May 5, 2010) (J. Boyle). Accordingly, even though it was brought up for the first time in its response to the Motion to Remand, Nutmeg's improper joinder argument was not waived.[2]

C.      *Improper Joinder & Sufficiency of Plaintiffs' Pleadings*

Plaintiffs argue that one Plaintiff, Pharos Partners, is a citizen of Connecticut, and that, because Nutmeg is also a Connecticut citizen, complete diversity does not exist in this case. Doc. 19, Pls.' Br. 8. Nutmeg argues that Pharos Partners is an improperly joined party and should therefore

---

[2]Although courts more commonly deal with improper joinder in the context of a nondiverse defendant as the allegedly improperly joined party, the improper joinder analysis established in other cases applies equally regardless of whether a nondiverse defendant or plaintiff is involved. *Lone Star Fund*, 2010 WL 1790392, at *4 n.6.

not be considered in deciding subject matter jurisdiction. Doc. 28, Def.'s Resp. 9. For the reasons stated below, the Court finds that Pharos Partners is a properly joined, non-diverse party.

The Fifth Circuit has recognized two ways a district court may go about deciding whether a plaintiff has a reasonable basis for recovery under state law and thus is properly joined. *Guillory v. PPG Indus. Inc.*, 434 F.3d 303, 309 (5th Cir. 2004) (citing *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 271 (5th Cir. 1992)). First, the court may conduct a Rule 12(b)(6)-type analysis to determine whether the allegations of the plaintiff's complaint state a claim under state law against the in-state defendant. *Smallwood*, 385 F.3d at 573. In most cases, there will be no improper joinder if a plaintiff can survive such a challenge. *Id.* A district court may also, in its discretion, "pierce the pleadings" and consider summary judgment-type evidence to "determine whether, under controlling state law, the non-removing party has a valid claim against the non-diverse parties." *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004) (quoting *LeJeune*, 950 F.2d at 271). A summary judgment inquiry is "appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573-74. Even where summary judgment-type evidence is reviewed, unchallenged factual assertions must be considered in a light favorable to the plaintiff, and contested issues of fact and ambiguities in controlling state law must be resolved in the plaintiff's favor. *McKee*, 358 F.3d at 334. In this sense, the standard to be applied is more akin to a Rule 12(b)(6) standard than a Rule 56 standard. *Id.*

1.      Federal or Texas Pleading Standard

A threshold question before the Court is whether to apply the federal or Texas pleading standard in its determination whether Pharos Partners has sufficiently pled its state claims against Nutmeg. The decision about which pleading standard to apply is "critical to resolving the issue of

[the pleading's] adequacy." *Durable Specialties, Inc. v. Liberty Ins. Corp.*, No. 3:11-CV-739-L, 2011 WL 6937377, at *4 (N.D. Tex. Dec. 30, 2011). The parties in this case disagree as to which standard is appropriate. While Nutmeg applies the federal pleading standard in its brief, Plaintiffs specifically request that the Court follow the Texas "fair notice" standard. Doc. 31, Pls.' Reply 13.

The Fifth Circuit has not directly addressed this issue in a published opinion. *See Yeldell v. GeoVera Speciality Ins. Co.*, No. 3:12-CV-1908-M, 2012 WL 5451822, at *2 (N.D. Tex. Nov. 8, 2012). However, in an unpublished opinion, the Fifth Circuit has applied the Texas "fair notice" standard under similar circumstances. *See De La Hoya v. Coldwell Banker Mex. Inc.*, 125 F. App'x 533, 537-38 (5th Cir. 2005) (applying the Texas "fair notice" standard in an improper joinder case). The application of the Texas pleading standard seems to be more appropriate under these circumstances given that the federal pleading standard under *Twombly* and *Iqbal* is arguably more stringent than the Texas "fair notice" requirement, and "[f]undamental fairness compels that the standard applicable at the time the initial lawsuit was filed in state court should govern." *Durable Specialities*, 2011 WL 6937377, at *5. Thus, this Court will apply the Texas pleading standard to determine whether Pharos Partners has stated a claim for relief against Nutmeg.

Texas state courts follow a "fair notice" pleading standard, which looks to "whether the opposing party can ascertain from the pleading[s] the nature and basic issues of the controversy and what testimony will be relevant." *SFTF Holdings, LLC v. Bank of Am.*, No. 3:10-CV-0509-G, 2011 WL 1103023, at *1 (N.D. Tex. Mar. 22, 2011) (quoting *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000)). A pleading may contain legal conclusions as long as fair notice to the opponent is given by the allegations as a whole. Tex. R. Civ. P. 45(b). Furthermore, an original petition should be construed liberally in favor of the pleader, and the court "should uphold the

petition as to a cause of action that may be reasonably inferred from what is specifically stated, even if an element of the cause of action is not specifically alleged." *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993); *see also Landor v. State Farm Lloyds*, No. 3:12-CV-4268-M, 2013 WL 1746003, at *2 (N.D. Tex. April 23, 2013).

    2.    Improper Joinder

Nutmeg alleges that Pharos Partners cannot make out a viable claim for breach of contract, and therefore is improperly joined. Doc. 28, Def.'s Resp. 10. In order to prove its breach of contract claim, Pharos Partners must plead facts showing: "(1) the existence of a valid contract; (2) performance or tender of performance; (3) breach by the defendant; and (4) damages resulting from the breach." *United States Ins. Co. v. Lynd Co.*, 399 S.W.3d 206, 215 (Tex. App.–San Antonio 2012, pet. denied) (noting the elements of a breach of contract claim are (1) a valid contract, (2) the plaintiff performed or tendered performance, (3) the defendant breached the contract, and (4) the plaintiff was damaged as a result of the breach). Nutmeg does not contend that there was no valid contract between Pharos Partners and itself, but it does maintain that Pharos Partners has failed to allege facts to establish that Nutmeg breached the contract or that Plaintiff properly tendered performance. Doc. 28, Def. Resp. 10. Nutmeg advances at least six arguments to show that Pharos Partners has failed to state a claim for breach of contract, each of which is addressed, in turn, below.

Nutmeg argues, first, that Pharos Partners' breach of contract claim is deficient because Plaintiffs' petition does not identify which provision of the insurance policy Nutmeg allegedly breached. Doc. 28, Def.'s Resp. 10. A review of the petition, however, reveals that Plaintiffs have identified policy provisions and factual circumstances that are specific enough to make out a claim for breach of contract. *See* Doc. 41, Orig. Pet. ¶¶ 13-18, 29, 36-37, 45, 50-51; *see also Encompass*

*Office Solutions, Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 953 (E.D. Tex. 2011) (acknowledging that a plaintiff does not need to identify a specific contract provision under Texas law in order to proceed past the pleading stage on its breach of contract claim). Nutmeg rests its argument on the fact that Plaintiffs identify the policy provisions that set out their coverage under the Policy at the beginning of the petition, but do not reproduce these same provisions later as they describe the factual circumstances that constitute a breach of the Policy. Doc. 28, Def.'s Resp. 4. This argument is unconvincing because the language that Plaintiffs employ leaves no question as to what provisions Nutmeg allegedly breached. Doc. 41, Orig. Pet. ¶¶ 36-37, 45, 47-51. Accordingly, the Court finds that the allegations in Plaintiffs' petition gave Nutmeg adequate and fair notice of Pharos Partners' breach of contract claim such that it satisfied the Texas standard for pleading.

Nutmeg's second argument as to why Pharos Partners' breach of contract claim must fail is that Pharos Partners did not timely report its claims under the notice provisions of the Policy, and therefore Nutmeg is not obligated to advance any defense costs or fees. Doc. 28, Def.'s Resp. 13. Plaintiffs assert that the Policy extends coverage to claims made outside the Policy period as long as the insured provides notice of a wrongful act during the Policy period. Doc. 31, Pls.' Reply 8. They maintain that their claims were therefore timely because they gave proper notice of wrongful acts to Nutmeg as early as October 2008. *Id.*; doc. 4-1, Orig. Pet. Ex. A-2 ¶¶ 34-35. Nutmeg responds to this assertion by stating that Plaintiffs' notice was inadequate because it did not provide particular reasons for anticipating a claim. Doc. 28, Def.'s Resp. 14.

The Policy unambiguously states that notice need only be given during the policy period. Doc. 29, Policy § VII(A) Ex. 5, at 23. Section VII.(A) of the policy, the notice provision, provides in full:

> *If during the Policy Period the Insured Persons or the Insured Organization become aware of a specific Wrongful Act that may reasonably be expected to give rise to a Claim against any Insured Person or the Insured Organization*, and, if such Wrongful Act is reported to the Insurer during the Policy Period in writing with particulars as to the reasons for anticipating such a Claim, the nature and dates of the alleged Wrongful Act, the alleged injuries or damages sustained, the names of potential claimants, any Insured Person involved in the alleged Wrongful Act and the manner in which the Insured Persons or the Insured Organization first became aware of the specific Wrongful Act, *then any Claim subsequently arising from such specific Wrongful Act duly reported in accordance with this paragraph shall be deemed under this Policy to be a Claim made during the Policy Period.*

*Id.* (emphasis added). In their Original Petition, Plaintiffs allege that they provided Nutmeg with notice of the *Siddle I & II* claims beginning in October 6, 2008, well within the policy period, which extended from May 2008 until May 2009. Doc. 4-1, Orig. Pet. Ex. A-2 ¶¶ 34-37. Nutmeg does not directly rebut these claims, but instead maintains that Plaintiffs' notice was inadequate "because it did not provide particular reasons for anticipating a claim." Doc. 28, Def.'s Resp. 14 n.3. Nutmeg provides no reasons and points to no evidence to support this bald assertion, however. Viewing the facts in the light most favorable to Pharos Partners, as the Court must at this stage, it cannot conclude that Nutmeg's argument as to timeliness is sufficient to show that there is no reasonable basis upon which the Court can predict that Pharos Partners will recover on its breach of contract claim. Plaintiffs' petition alleges sufficient facts to show that they reported a Wrongful Act covered by the policy to Nutmeg well within the policy period, and therefore states a claim for breach of contract. Doc. 4-1, Orig. Pet. Ex. A-2 ¶ 34; Doc. 29, Policy § VII Ex. 5, at 23.

Nutmeg's third argument to show that Pharos Partners cannot make out a breach of contract claim is that Nutmeg was under no obligation to pay Plaintiffs' costs because Nutmeg's only obligation under the contract was to pay for "loss" which Pharos Partners "[became] *legally obligated to pay.*" Doc. 28, Def.'s Resp. 4 (emphasis added). Nutmeg's argument is that it is not obligated to

indemnify Pharos Partners because *Siddle I* and *Siddle II* were dismissed and thus Pharos Partners never became "legally obligated" to pay the plaintiffs in *Siddle I* and *Siddle II* anything. Doc. 28, Def.'s Resp. 10-11.

A careful reading of the policy shows, however, that the legal fees that Plaintiffs, including Pharos Partners, accrued in the *Siddle* actions did fall under the policy's definition of "loss." The Policy states that Nutmeg "will pay on behalf of the Insured Person [Plaintiffs] Loss which the Insured Persons [Plaintiffs] become legally obligated to pay as a result of a Claim first made during the Policy Period . . . for a Wrongful Act which takes place during or prior to the Policy Period." Doc. 29, Policy Ex. 5, at 14. *Insured Persons*, *Insured Organization*, *Loss*, *Claim*, *Wrongful Act*, and *Policy Period* are all defined in the Policy.[3] *Loss* is defined as sums Plaintiffs are "legally obligated to pay as a result of any Claim insured by this policy, *including Claims Expenses, compensatory damages, settlement amounts, and legal fees and costs* awarded pursuant to judgment." Doc. 29, Policy § IV(I) Ex. 5, at 20. *Claims Expenses* are defined as "reasonable and necessary costs, charges, fees (*including attorney's fees and experts' fees*) and expenses incurred in the defense of a Claim and the premium for appeal, attachment or similar bonds, but shall not include the wages, salaries or expenses of any Insured Person or any Insured Organization." Doc. 29, Policy § IV(B) Ex. 5, at 19 (emphasis added).

---

[3] *Claim* includes a "written demand or notice for monetary or non-monetary relief against an Insured commenced by such Insured's receipt of such demand or notice; . . . [or] an arbitration or civil proceeding against an Insured commenced by the service of a demand for arbitration, complaint or similar pleading . . . ." Doc. 29, Ex. 5, Policy § IV(A). *Insured Persons* means "any natural person who was, is, or shall become a duly appointed or elected director, officer, general partner, or equivalent executive of an Insured Organization." *Id.* § IV(E). *Insured Organization* means the "Parent Company, any organization scheduled as such in Endorsement No. 1, and any subsidiary thereof." *Id.* § IV(D). *Policy Period* is defined as "the period set forth in Item B of the Declarations or any shorter period that may occur as a result of a cancellation or termination of this Policy." *Id.* § IV(K). *Wrongful Act* is defined as "[a]ny actual or alleged error, misstatement, misleading statement, act, omission, neglect, breach of duty committed or attempted: (1) by the Insured Persons, in their capacity as such; (2) . . . by the Insured Organization . . . ." *Id.* § IV(P).

Section III(C) provides that the "Insurer shall advance on behalf of the Insureds Claims Expenses which the Insureds have incurred in connection with Claims made against them, prior to disposition of such Claims. . . ." Doc. 29, Policy § III(C) Ex. 5, at 18-19.

Pursuant to the language of the policy, therefore, Nutmeg is "legally obligated" by contract to pay for "loss" incurred by an "insured person" for "claims" that occur due to "wrongful acts." *See* Doc. 29, Policy Ex. 5; Doc. 4-1, Orig. Pet. Ex. A-2 ¶¶ 13-18. The policy would likely have provided coverage for any loss incurred in the *Siddle I* and *Siddle II* actions because the claims in those actions grew out of acts that would qualify as "wrongful acts" under the policy. Doc. 29, Policy Ex. 5, at 21.[4] And since "loss" includes "claims expenses," which include expenses incurred in the defense of a claim, the defense costs that Pharos incurred, and thus became legally obligated to pay in the *Siddle I* and *Siddle II* actions, fall squarely into the realm of expenses that the Pharos Policy and DC Policy cover. Doc. 29, Policy § IV Ex. 5, at 20.

Nutmeg's fourth argument is that Pharos Partners' breach of contract claim is infirm because Nutmeg was not required to defend Pharos Partners under the Policy. Doc. 28, Def.'s Resp. 11. Specifically, Nutmeg notes that Plaintiffs' Petition in paragraph 38 states "As a result of Nutmeg's failure to provide coverage and advance Claims Expenses under the Policies, Crants III, Devlin, and Pharos were forced proceed (sic) on their own . . . ." Doc. 28, Def.'s Resp. 11. Nutmeg is correct in

---

[4]Nutmeg's argument that the claims made in the *Siddle* actions were uninsurable as a matter of law, and thus that it was not obligated to pay the accompanying claims expenses, is addressed below. Doc. 28, Def.'s Resp. 8 n.3. Given the facts alleged in Plaintiffs' petition as well as the breadth of the term *claim* in the policy, which includes a "written demand or notice for monetary or non-monetary relief" or a "civil proceeding . . . commenced by the service of a . . . complaint," the loss claimed here would likely be covered absent a freestanding legal rule that made the loss uninsurable as a matter of law. Doc. 29, Ex. 5, Policy § IV(I).

arguing that it was not required to defend Pharos Partners under the contract.[5] This argument does not defeat Pharos Partners' contract claim, however, because Pharos does not claim that Nutmeg had a duty to defend, but instead argues that Nutmeg had a duty to advance and pay costs under the Policies. Doc. 4-1, Orig. Pet. Ex. A-2, at 1-2.

Fifth, Nutmeg asserts that the Policy does not contain an obligation to reimburse Plaintiffs for their claims "carte blanche." Doc. 28, Def.'s Resp. 12. Nutmeg argues that the language from § VII of the Policy vests in it the ability to advance only those Claims Expenses "it believes" are covered under the policy, and that it therefore had no obligation to advance costs to Pharos at all. Doc. 28, Def.'s Resp. 12. The policy states

> [I]f there is an agreement on an allocation of Claims Expenses, the Insurer *shall* advance on a current basis Claims Expenses allocated to covered loss. If there can be no agreement on an allocation of loss . . . the insurer *shall* advance on a current basis Claims Expenses which the Insurer *believes* to be covered under the policy *until* a different allocation is negotiated, arbitrated, or judicially determined . . .

Doc. 29, Policy § VII Ex. 5, at 23 (emphasis added). Based on this language, Nutmeg claims it had discretion to pay Claims Expenses as it believed appropriate. Doc. 28, Def.'s Resp. 12.

Although Nutmeg characterizes Pharos Partners' claims as being based on Nutmeg's failure to advance Claims Expenses that Pharos Partners believed should have been covered as they were accrued, doc. 28, Def.'s Resp. 12-13, Pharos Partners' claims are more than that. Pharos Partners insists not only that Nutmeg failed to advance expenses as they were accrued, but also that Nutmeg has subsequently refused to indemnify Pharos Partners for expenses covered under the policies. Doc. 4-1, Org. Pet. Ex. A-2 ¶¶ 44-45, 50. The policy provisions indicate that Nutmeg had an obligation

---

[5] "THE POLICY DOES NOT PROVIDE ANY DUTY OR OBLIGATION ON THE PART OF THE INSURER TO DEFEND THE INSURED PERSON(S) AND THE INSURED ORGANIZATIONS." Doc. 29, Policy Ex. 5, at 14.

to advance costs it believed to be covered, and also indicate that Nutmeg had a responsibility to negotiate a later allocation of costs, regardless of its initial discretion in allocating costs. Doc. 29, Policy § VII Ex. 5, at 23. Thus, by pleading that Nutmeg refused to advance costs that fall within the policies, and by asserting that Nutmeg has failed to negotiate another allocation of costs under the policy, Pharos Partners has pled sufficient facts to make out a claim for breach of contract.

Finally, Nutmeg argues that Pharos Partners' breach of contract claim must fail because the Plaintiffs' claims arising out of *Siddle II* action were uninsurable as a matter of law. Doc. 28, Def.'s Resp. 14 n.3. Specifically, Nutmeg maintains that the *Siddle II* plaintiffs sought to recover wrongfully received money from Pharos Partners, and because the Fifth Circuit has recognized "loss" under an insurance contract does not include "an ill-gotten gain," Plaintiffs cannot recover any claims expenses generated in defending such actions. *Id.* While Nutmeg is apparently correct in its interpretation of the law, it does not cite to any filing or pleading to demonstrate that the *Siddle* plaintiffs sought disgorgement or restitution of ill-gotten funds as a remedy. The nature of the damages sought in the underlying action is a critical factor that must be established before the Court can find that the claims here were uninsurable and that Pharos Partners' breach of contract claim is therefore foreclosed. *See In re TransTexas Gas Corp.*, 597 F.3d 298, 310 (5th Cir. 2010) (finding that a return of funds due to a fraudulent transfer was restitutionary in nature, and therefore not insurable); *William Beaumont Hospital v. Fed. Ins. Co.*, No. 13-1468, 2014 WL 185388, at *5 (6th Cir. Jan. 16, 2014) (holding that a settlement did not constitute disgorgement, and was therefore covered under an insurance policy, when a hospital retained fees rather than wrongfully acquired them); *Wojtunik v. Kealy*, No. CV-03-2161-PHX-PGR, 2011 WL 1211529, at *10 (D. Ariz. Mar. 31, 2011) (finding that certain damages were covered as a "loss" under an insurance policy, even when they

apparently were intended to make the plaintiff whole, because the allegations in the complaint did not necessarily restrict potential recovery to restitutionary or disgorgement-type damages). Nutmeg points to Plaintiffs' petition and insists that Plaintiffs admit that the *Siddle* plaintiffs sought restitution. But the petition in fact only recites that the *Siddle* plaintiffs' claims were based on allegations that Pharos had wrongfully received millions of dollars from another entity and does not reveal whether the damages sought were restitutionary in nature. Doc. 4-1, Orig. Pet. Ex. A-2 ¶ 32. Indeed, Plaintiffs maintain that the claims were insurable and the defense costs were therefore covered under the Policy. *Id.* ¶¶ 32, 34, 50-51. Without more information, therefore, the Court cannot conclude that there is no reasonable basis upon which it can predict that Pharos Partners will be able to recover on its breach of contract claim against Nutmeg.

Thus, for all the reasons stated above, Pharos Partners has pled sufficient facts to make out a claim for breach of contract and is therefore a properly joined party. Because the Court determines that Pharos Partners is a properly joined party with regards to its breach of contract claim, it does not decide whether Pharos has sufficiently pled its bad faith or Texas Insurance Code claims.

C.    *Motion to Remand and Jurisdictional Discovery*

1.    Subject Matter Jurisdiction

Having found that Pharos Partners is a properly joined party, the Court must now determine whether it has subject matter jurisdiction. Nutmeg removed this case to federal court on the basis of diversity. Doc. 1, Not. of Removal 2-3. Nutmeg alleges that Plaintiffs are citizens of Texas and Tennessee, and that Nutmeg is a citizen of Connecticut, and that the parties are therefore completely diverse. *Id.* Plaintiffs allege that one of the partners of plaintiff Pharos Capital Partners, LP is a citizen of Connecticut, making the parties non-diverse and requiring the court to remand the case to state

court. Doc. 19, Pls.' Br. 11-13. The Court hereby finds that the parties are not completely diverse, and thus will remand the case to state court.

Non-corporate entities, such as partnerships, limited partnerships, and limited liability companies, are deemed to be citizens of all states wherein any of their partners or members are citizens. *Whalen v. Carter*, 954 F.2d 1087, 1095 (5th Cir. 1992). A corporation is a citizen of "any state by which it has been incorporated and the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

Nutmeg is a resident of Connecticut for purposes of diversity. Doc. 4, Not. of Removal 2. Plaintiffs offered a declaration from Kimberly D. Futrell, the Chief Financial Officer of Pharos Capital Group GP, LLC (formerly Pharos Capital Group, LLC), who stated that Pharos Capital Group, LLC is a partner of Pharos Capital Partners, LP. Doc. 20, Futrell Decl. Ex. 1 ¶¶ 2-4. Further, Futrell stated that Landmark Primary Partners IX, LP is one of the limited partners of Pharos Capital Partners, LP. *Id.* Peter J. Klementon, Manager of Private Equity for Landmark Partners, corroborated this testimony in his own declaration, and further stated that Landmark Primary Partners IX, LP is a limited partnership with its principal place of business in Connecticut. Doc. 20, Klementon Decl. Ex. 2 ¶¶ 2-3. Thus, Plaintiff Pharos Capital Partners, LP is a resident of Connecticut for purposes of diversity, and the parties are not completely diverse.

Nutmeg insists that, should Pharos Capital Partners, LP be found to be a proper party, then limited jurisdictional discovery is warranted to determine the proper citizenship of Plaintiffs. Doc. 28, Def.'s Resp. 13. Nutmeg's proposal for jurisdictional discovery is based on questions it raises as to whether Pharos Capital Partners, LP is the actual entity discussed in Futrell and Klementon's declarations. Doc. 28, Def.'s Resp. 13. Nutmeg specifically argues that there are nine limited

partnerships in Delaware that contain "Pharos Capital Partners" in their name and that it believes Futrell uses "Pharos Capital Partners, LP" as shorthand in her declaration. Doc. 28, Def.'s Resp. 12. Nutmeg also points to inconsistencies between Plaintiffs' motions and Klementon's declaration, as well as to inconsistencies between the Plaintiffs' names and those on record with various Secretaries of State, to justify limited jurisdictional discovery. *Id.* at 13-14.

Limited jurisdictional discovery may be warranted if the issue of subject matter jurisdiction turns on a disputed fact. *In re MPF Holdings US LLC*, 701 F.3d 449, 457 (5th Cir. 2012). But as the party removing the suit to federal court, the defendant bears the burden of establishing that jurisdiction exists. *See NL Industries v. OneBeacon*, 435 F. Supp. 2d 558, 562 (N.D. Tex. 2006) (stating that the removing party should anticipate a motion to remand, and should be prepared to show that the parties are completely diverse without the need for jurisdictional discovery). "Jurisdictional discovery places an undue and unnecessary burden on the parties when the proponent of such discovery only supports the request by conjecture, speculation, or suggestion." *Id.*

The evidence that Plaintiffs submit is not as contradictory as Nutmeg suggests and Nutmeg's doubts as to the accuracy of Plaintiffs' evidence is not sufficient to justify jurisdictional discovery. First, there are no grounds for questioning whether Plaintiff Pharos Capital Partners, LP is the same entity as the one referred to in Futrell and Klementon's declarations. Futrell and Klementon uniformly refer to "Pharos Capital Partners, LP" in their declarations, the party named in this action. Doc. 20, Futrell Decl. Ex. 1 ¶ 4; 20, Klementon Decl. Ex. 2 ¶ 7. Furthermore, the records on file with the Delaware Secretary of State lists Pharos Capital Partners, LP as a registered entity, and shows that its general partner is Pharos Capital Group, LLC, which Futrell also corroborates in her declaration. Docs. 29, Del. Sec'y of State Records Ex. 1, at 3; 29, Certificate Ex. 4. This evidence

tends to establish that Pharos Capital Partners, LP is an existing entity and that Futrell and

Klementon have sufficient personal knowledge about the partnership in order to testify about its

structure. Nutmeg, in turn, provides no evidence to suggest that Futrell or Klementon have

attempted to mislead this Court through their sworn declarations.[6] It merely speculates as to whether

Futrell was in fact short-handing "Pharos Capital Partners, LP" without pointing to any persuasive

evidence or circumstances to suggest this was the case. Unfounded speculation about the sufficiency

of Plaintiffs' evidence as to jurisdiction does not justify jurisdictional discovery. *NL Industries*, 435

F. Supp. 2d at 565.

Nutmeg also suggests that there is an error in Klementon's testimony because in his

declaration Klementon refers to Landmark Primary Partners IX, LLC as a limited partner of Pharos

Capital Partners, LP, while Plaintiffs' brief only references a Landmark Partners IX, LLC (without

the word "Primary" in the name). Doc. 28, Def.'s Resp. 13. Plaintiff addresses this concern by stating

the reference in its motion was simply a typographical error. Doc. 31, Pls.' Reply 11 n.23. Again the

Court will not sustain federal jurisdiction on the basis of speculation, and thus questions about

whether the omission of a single word is really just a typographical error is not sufficient to warrant

jurisdictional discovery. *NL Industries*, 435 F. Supp. 2d at 565.

Finally, Nutmeg argues that there is a discrepancy between Futrell's declaration and the

---

[6]The fact that Pharos Capital Partners, LP claims to have headquarters in Texas and Tennessee, but is not registered with the Secretaries of State in those respective states, also does not undermine Klementon and Futrell's testimony or suggest that they have attempted to mislead the Court. Klementon and Futrell testify as to the relationships of the parties and the citizenship of entities related to Pharos Capital Partners, LP, not to the headquarters of Pharos Capital Partners, LP. Doc. 20, Futrell Decl. Ex. 1 ¶ 4; 20, Klementon Decl. Ex. 2 ¶ 7. While the lack of records on file with the Secretaries of State may raise questions as to the Plaintiffs' record keeping, it says nothing about whether Pharos Capital Partners, LP, is the entity that Plaintiffs' claim it to be.

Delaware Secretary of State's records. Nutmeg points out that while the Secretary's records identify Pharos Capital Group, LLC as Pharos Capital Partners, LP's general partner, Futrell states that Pharos Capital Group GP, LLC is the general partner of Pharos Capital Partners, LP. Doc. 28, Def.'s Resp. 12-13. This apparent discrepancy is of no significance, however, because Futrell's declaration testifies that Pharos Capital Group GP, LLC is formerly known as Pharos Capital Group, LLC. Doc. 20, Futrell Decl. Ex. 1 ¶ 2. The fact that Pharos may not have updated its certificate of limited partnership according to Delaware law does not show that Futrell is lying or disprove her testimony such that it justifies jurisdictional discovery.

Thus, limited jurisdictional discovery is unwarranted because Nutmeg presents nothing more than conjecture to dispute Plaintiffs' evidence that Plaintiff Pharos Capital Partners, LP is a citizen of Connecticut.

D.    *Timeliness of Plaintiffs' Motion to Remand*

The parties also disagree as to whether the Nutmeg was required to allege the identity and citizenship of the partners, and whether this defect in the removal was a procedural or substantive defect in the removal. Doc. 19, Pls.' Br. 11. Nutmeg also maintains that Plaintiffs' Motion to Remand was filed after thirty days, and that Plaintiffs therefore waived any procedural defects in Nutmeg's Notice of Removal. 28 U.S.C. § 1447(c). Nutmeg argues that a notice of removal is not required to name every partner of a limited partner, or the second or third tier partnerships. Doc. 28, Def.'s Resp. 11. Further, Nutmeg states that if such a requirement did exist, then it would be procedural in nature, and thus waived because procedural defects are waived after thirty days. Doc. 28, Def.'s Resp. 11. Plaintiffs argue that the requirement to allege citizenship and identity of the parties is a substantive defect that deprives the Court of jurisdiction. Doc. 31, Pls.' Reply 3.

The Fifth Circuit has stated that a "procedural defect is any defect that does not go to the question of whether the case originally could have been brought in federal court." *Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1544 (5th Cir. 1991). A procedural defects occurs when, "although the action is within removal jurisdiction, the defendant has not pursued the proper procedure in removing the suit." *Id.* Any procedural defects are waived if they are not asserted thirty days after removal. 28 U.S.C. § 1447.

In this case, the defect is a substantive defect. Plaintiffs argue that subject matter jurisdiction does not extend to this case because the parties are non-diverse and that the lack of diversity is a substantive defect. Doc. 31, Pls.' Reply 9. 28 U.S.C. § 1447 specifically states that "a motion to remand on the basis of any defect other than *lack of subject matter jurisdiction* must be made within 30 days after the filing of the notice of removal." *See Mahlin v. GMAC Mortgage, LLC*, No. 3:13-CV-906-M-BK, 2013 WL 6153285, at *2 (N.D. Tex. Nov. 22, 2013). Therefore Plaintiffs' motion to remand is proper, even outside the thirty day period stated in 28 U.S.C. § 1447, because it seeks remand based on the lack of complete diversity, which is a matter of subject matter jurisdiction. *Andrews v. US Fidelity & Guar. Co.*, 789 F. Supp. 784, 786-87 (S.D. Miss. 1992).

F.    *Awarding Fees*

A court upon remand may require payment of just costs and actual expenses as a result of removal. 28 U.S.C. § 1447(c). Such a reward is proper where there is no objectively reasonable basis for seeking removal. *Kinder Morgan Liquids Terminals, LLC v. Ponns & Co., Inc.*, No. CIV A H-06-3225, 2006 WL 3691192, at *2 (S.D. Tex. Dec. 12, 2006). That is not the case here. In this case, the citizenship of the several Plaintiffs was buried under tiers of partnerships, was difficult to discern, and required sworn declarations to determine proper citizenship. Nutmeg also had a valid, albeit

incorrect, argument for improper joinder considering that Plaintiffs' Original Petition set out that their citizenship as Texas and Tennessee. Doc. 4-1, Orig. Pet. Ex. A-2 ¶ 2-8. As such, the Court declines to award plaintiffs attorney fees or costs.

## IV.

## CONCLUSION

For the reasons stated above, removal was improper and Plaintiffs' Motion to Remand is **GRANTED**. This case is **REMANDED** to the 14th Judicial District Court of Dallas County, Texas, for further proceedings.

**SO ORDERED.**

**Dated: February 26, 2014.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE